Mishkin v 155 Condominium, Bd. of Mgrs. of 155 Condominium (2004 NY Slip Op 50066(U))

[*1]

Mishkin v 155 Condominium, Bd. of Mgrs. of 155 Condominium

2004 NY Slip Op 50066(U)

Decided on February 19, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 19, 2004

Supreme Court, New York County
 RUTH MISHKIN, Petitioner, - -
against
THE 155 CONDOMINIUM, THE BOARD OF MANAGERS OF THE 155 CONDOMINIUM and GARY DONG, Respondents.
Index No. 106770/03

Herman Cahn, J.
Petitioner seeks an order annulling the election for the Board of Managers held during the 2002 annual meeting of respondent 155 Condominium, and directing a new election (CPLR 7801 et seq.). Petitioner is a Condominium unit owner.[FN1] Petitioner also seeks an order directing the Condominium to furnish her with the names and addresses of all other unit owners.
Respondents cross-moved to dismiss for failure to state a claim (CPLR 3211 [a] [7]).
Respondent Gary Dong was the president of respondent Board of Managers.
The facts are not in dispute. By notice dated October 2, 2003, the court informed the parties of its intention to treat the motion and cross-motion as a motion and cross-motion for summary judgment (CPLR 3211 [c]). As stated in the notice, this matter depends solely upon the court's interpretation of the Condominium's By-Laws. By letters dated October 14, 2003, counsel consented.
The By-Laws:
Section 2.7 of the Condominium's By-Laws (Verified Petition Ex. A) provide for a nine-member Board of Managers "to be elected by the Unit Owners pursuant to the terms of Section 4.9 hereof." Section 4.9 (A) provides, in pertinent part:
When voting for members of the Condominium Board, each
Unit Owner (including Sponsor or its designee, for so long as Sponsor
or such designee shall own Unsold Units) shall be entitled to cast one
vote for each .0001% of Common Interest attributable to his or her
Unit(s) per member to be elected.
Section 4.9 (C) provides that "[s]ubject to the terms of paragraph (D) of this [*2]Section 4.9, all elections of members of the Condominium Board shall be determined by plurality vote." Section 4.9 (D), in turn, provides as follows, in pertinent part:
Not more than . . . three members of the Condominium Board
shall serve by reason of the votes cast by Sponsor or its designee at any
election held after the expiration of the Initial Control Period.[[FN2]]
However, Sponsor or its designee shall have the right to elect the
following minimum number of members of the Condominium
Board: * * * (b) two members, for so long as the Common Interests

attributable to any Units owned by Sponsor or its designee equals, in the aggregate, less than 35% but more than 15% of the Common Interests of
all Units . . . .
There is no dispute that the Condominium's Sponsor, non-party Cheltenham Associates, holds approximately 17% of the Condominium's Common Interests and, thus, comes within the foregoing clause allowing it "the right to elect," i.e., designate, a minimum number of two Board members of its choosing (Verified Petition ¶¶ 10, 17; Brett Aff. ¶ 6). The dispute concerns the extent to which the Sponsor may participate in the election of additional board members.
Petitioner argues that a proper reading of Section 4.9 (D) permits the Sponsor to designate two board members, as stated, and to vote for only one additional member, in accord with the prefatory clause in that section providing that "not more than three members of the Condominium Board shall serve by reason of the votes cast by Sponsor . . . ."
Respondents employ a drastically different construct. They do not read the prefatory clause as a broad limitation to the Sponsor's ability to vote in the board election, as petitioner does. Rather, respondents posit that the clause narrowly limits the Sponsor's ability to constitute the winning vote for any or all of the various candidates, restricting that ability to "not more than three" candidates (By-Laws § 4.9 [D]). In other words, respondents argue that a proper reading of the By-Laws permits the Sponsor to designate two (as petitioner concedes) and to vote for any or all of the remaining seven candidates, with the caveat that of those remaining seven, the Sponsor's votes cannot be the vote which put more than three of them "over the top." Respondents urge this construct based on the distinct language: "not more than three
members . . . shall serve by reason of the votes cast by Sponsor . . . ." (Id. [emphasis added.) That is to say, the Sponsor may vote for all seven; but of those seven, only as to three can the Sponsor's vote be the decisive, plurality achieving vote.
In adherence to that construct, the December 2002 annual meeting, overseen by respondents, produced the following slate of nine designated and elected board members:
 1. Harriet Rosenbluth (Sponsor's Designee)
 2. Nancy Reese(Sponsor's Designee)
 3. [*3]John Ansbro(Elected, with Sponsor's Unnecessary [FN3] Participation)
 4. Gary Dong(Elected, with Sponsor's Unnecessary Participation)
 5. Arnold Gitomer(Elected, with Sponsor's Unnecessary Participation)
 6. John Scelfo(Elected, with Sponsor's Unnecessary Participation)
 7. Adele Rifkin(Elected, with Sponsor's Necessary Participation)
 8. Claire Carcich(Elected, with Sponsor's Unnecessary Participation)
 9. Jeffrey Haas(Elected, with Sponsor's Necessary Participation)

(Verified Petition Ex. E; Brett Aff. ¶¶ 4-9, Ex. B.)[FN4] Respondents insist that the election was proper because, other than the Sponsor's two designees, Rosenbluth and Reese, only two managers, Rifkin and Haas, were elected "by reason of the votes cast by the Sponsor . . . ." (By-Laws § 4.9 [D] [emphasis added].)[FN5]
Discussion:
Summary judgment is proper where there is no genuine issue as to any material fact, and a moving party is entitled to judgment as a matter of law (Alvarez v Prospect Hosp., 68 NY2d 320 [1986]). Interpretation of an unambiguous contract is an issue of law for the court (Chimart Assocs. v Paul, 66 NY2d 570 [1986]; Sutton v East River Sav. Bank, 55 NY2d 550 [1982]).
A condominium's by-laws constitute a contract with the unit owners, and are, as all contracts, to be construed in a manner giving effect to all of their terms (Lesal Assocs. v Board of Mgrs., 309 AD2d 594 [1st Dept 2003]).
Section 4.9 (A) of the By-Laws unequivocally entitles each unit owner, "including Sponsor," to vote its shares for any candidate. Section 4.9 (C) provides that, subject to the terms of Section 4.9 (D), all Board elections "shall be determined by plurality vote." This is precisely what occurred at the December 16, 2002 election.
The Sponsor voted its 17% common interest for each of seven candidates. Up to two of those candidates were permitted by Section 4.9 (D) to be elected "by reason of the votes cast by Sponsor . . . ."
In Rego Park Garden Assocs. v Rego Park Gardens, Inc. (174 AD2d 337 [1st [*4]Dept], lv denied 78 NY2d 859 [1991]), the Appellate Division addressed a sponsor voting restriction similar to the one at bar. Under the offering plan and the proprietary lease, the sponsor was entitled to designate two board members to a five member board. The offering plan also contained a provision that forbade the sponsor from exercising voting control over the board. The cooperative corporation sought a declaration that the sponsor could not participate in the election other than to name its two designees, asserting that, otherwise, the sponsor would be exercising unlawful voting control. The Appellate Division held that the sponsor was entitled to vote its shares in the election stating that "[t]he mere fact that new directors may be elected with the votes of the sponsor cannot, without more, be equated with exercising voting control as a matter of law." (Id., at 339.)
The court in Rego Park Garden Assocs. cited Semel v 6465 Realty Co. (Sup Ct NY County, index No. 25824/86), affd 131 AD2d 335 [1st Dept 1987]) where the court found that a similar offering plan restriction did not bar a sponsor from voting its shares, absent a showing that the directors for which the sponsor voted "were on the sponsor's payroll or received other remuneration from the sponsor." (Rego Park Garden Assocs., supra, at 339.)
Similarly, in Madison v Striggles (228 AD2d 170 [1st Dept 1996]), the Appellate Division held that a provision in a cooperative corporation's offering plan providing that "'Sponsor will vote its shares so that its votes . . . will not elect a majority of the Board of Directors,' does not prohibit the sponsor from combining its votes with those of the other resident shareholders . . . to elect three or more members of the five-member Board of Directors[,]" because, "to hold otherwise would deprive the sponsor of its right to vote all its shares." (Id.)
In the present case, petitioner's construction would dilute the Sponsor's right, under Section 4.9 (A), to vote its shares; subject, of course, to the limitation in Section 4.9 (D) that no more two such candidates may be elected "by reason of" the Sponsor's plurality-achieving vote. Petitioner's construction, severely restricting the Sponsor's participation in the election, is incorrect. The case law cited herein protects the right of all shareholders, including the Sponsor, to cast their votes in combination with one another.[FN6]
Petitioner's reference to the regulations governing condominiums (13 NYCRR 23.3 [w] [1]) is misplaced. The regulation merely directs that where, as here, the five year initial control period has expired, the "Sponsor shall disclose that a meeting will be held to elect new [*5]board members unrelated to the sponsor . . . ." (Id.) Petitioner does not allege that any of the Board members for whom the Sponsor voted were in any way related to the Sponsor, let alone "on the sponsor's payroll or receiv[ing] other remuneration from the sponsor." (Rego Park Gardens Assoc., supra, at 339.) 
As respondent Gary Dong attests, during the 12 years that he served on the Board, the Condominium has been conducting its Board elections in the same manner (Dong Aff. ¶ 2). The Sponsor has designated two Board members as of right; casting votes, afterward, for the seven remaining, elective, slots, based on its percentage of common interest attributable to its unit ownership (id.). Absent advance notice of a change in that practice, and given the propriety of their construction of the by-laws, respondents were correct to continue their practice (Tower Assocs. v Boulevard Towers Condominium, 295 AD2d 525 [2d Dept 2002]).
Petitioner's contention that the election should be annulled because she was allegedly denied access to a list of the names and addresses of all the unit owners, is without merit.[FN7] There is no provision in the Condominium Act (RPL art 9-B) requiring access to a list of unit owners which, in any event, is available through examination of public deed filings (RPL 339-s. Cf., A&A Props. NY Ltd. v Soundings Condominium, 177 Misc 2d 200 [Sup Ct NY County 1998]). Therefore, no basis exists to annul the election on the asserted ground of lack of access to owner information.[FN8]
Finally, petitioner alleges that one unit owner, Perry Rothenberg, was wrongly precluded from running for the board of managers, on account of his delinquency in paying common charges (Verified Petition ¶ 19). While petitioner does not dispute Rothenberg's delinquency, she points to Section 2.7 of the By-Laws which disqualifies a delinquent unit owner only "if the Condominium Board has perfected a lien against such Unit Owner's Unit and the amount necessary to release such lien has not yet been paid at the time of such election."
As respondents demonstrate, the ballots contained seven blank nominee spaces, enabling all unit owners to vote for Rothenberg, or whomever else they might have selected (Verified Petition Ex. D). Indeed, John Ansbro, who was one of those nominees, was not only elected to the Board (Verified Petition ¶ 22); but presently serves as the Condominium's president (Dong Aff. ¶ 1). Petitioner, thus, presents no basis for annulment of the December 16, 2002 election.
Accordingly, it is
ORDERED that respondents' cross-motion for summary judgment dismissing the verified petition is granted, and the same is hereby dismissed; and it is further
ORDERED that the clerk is directed to enter judgment accordingly.
Dated:February 19, 2004
[*6]
E N T E R :
 /S/ 
 J. S. C.
Decision Date: February 19, 2004
Footnotes

Footnote 1:The Condominium is located at 155 East 38th Street, New York, New York. 

Footnote 2:The parties agree that the subject matter election was held after the Initial Control Period (Verified Petition ¶ 13; Respondents' Mem. at 4 n. 3).

Footnote 3:The term "Unnecessary Participation," as used in this opinion, is intended to mean that the candidate won a plurality of all votes cast, without counting the Sponsor's vote for that candidate. 

Footnote 4:As acknowledged by petitioner, two candidates Isaac Ainetchi and Dorothy McConnon were not elected, although they were voted for by the Sponsor (Verified Petition Ex. D).

Footnote 5:Apart from challenging the Sponsor's right to vote for more than one manager, the verified petition seems to maintain that the Sponsor's unnecessary participation in the election of additional managers, i.e., Ansbro, Dong, Gitomer, Scelfo, and Carcich, invalidates the election even as to those candidates because, in petitioner's view, such participation constitutes unfair "voting control" in violation of condominium regulations contained in 13 NYCRR 23.3 (w) (1) (see, Verified Petition ¶ 15). 

Footnote 6:The court is unpersuaded by the suggestion of respondents' counsel (Riso Aff. ¶ 18) that the fair governance policies enunciated by the Appellate Division in Rego Park Garden Assocs. v Rego Park Gardens, Inc. and Madison v Striggles are inapplicable, merely because they were decided within the cooperative corporation context rather than in the context of condominium elections. Lying at the core of those decisions is the uniformly applicable concern against the dilution of residential voting rights, whether such rights are represented by cooperative corporate share ownership, or condominium common interest attributable to unit ownership (By-Laws § 4.9 [A]). While it is true that under the Condominium Act, "[t]he operation of the property shall be governed by by-laws" (RPL 339-u), nothing in the Condominium Act serves to inhibit the court's interpretation of condominium by-laws in a manner which preserves those policies while, at the same time, embraces the most reasonable construct, giving effect to all their pertinent provisions (Lesal Assocs., supra). 

Footnote 7:Dong attests that four months prior to the election, the Board of Managers offered the requested material to petitioner and her attorney-in-fact; but they declined (Dong Aff. ¶¶ 4-7). 

Footnote 8:Subsequent to the election, petitioner accepted receipt of the requested list (Riso Aff. ¶ 11).